IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


CHAD GILBERT                                                                            PLAINTIFF


VS.                                  CASE NO. 3:18CV00198 PSH


NANCY A. BERRYHILL, Acting Commissioner,
   Social Security Administration                                                       DEFENDANT


**ORDER**

Plaintiff Chad Gilbert ("Gilbert"), in his appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred in failing to resolve an apparent conflict between the testimony of the vocational expert ("VE") and the *Dictionary of Occupational Titles* ("DOT"), and in properly formulating his residual functional capacity ("RFC") assessment and a proper hypothetical question to the VE. The parties have ably summarized the medical records and the testimony given at the administrative hearings conducted on September 29, 2016, and on March 6, 2018.[1] (Tr. 56-90, 91-134). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period for purposes of Gilbert's disability determination is from the alleged onset date of January 30, 2015,

---

[1] A second administrative hearing occurred after the Appeals Council remanded the case, directing the ALJ to, among other things, identify and resolve any conflicts between the VE testimony and the DOT. (Tr. 188-189).

1

through May 7, 2018, the date of the ALJ's decision.

***Failure to Resolve an Apparent Conflict between the VE's testimony and the DOT.***

At the outset of the March 6, 2018, administrative hearing, the ALJ addressed VE Stacey McIssac ("McIssac"), stating, "Please keep in mind any opinions you have about the work history or any hypothetical questions I might ask that have information that differs from the information in the Dictionary of Occupational Titles that I need you to, you know, explain what the issues are and the differences." (Tr. 95). Subsequently, McIssac was asked to opine if a worker of Gilbert's background could perform work in the national economy. In pertinent part, McIssac was asked to assume Gilbert was limited to work requiring simple work instructions, making judgments in simple work-related situations, and responding appropriately to minor changes in the usual work routine. McIssac testified such a worker could perform the jobs of call out operator and surveillance monitor. (Tr. 125-133). Both of these jobs are, according to the DOT, performed at level 3 intellectual development level, which requires the ability to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, page 1011 (4th rev.ed. 1991). McIssac was not asked to, and did not, explain any conflict between the reasoning ability of the hypothetical worker described by the ALJ and the reasoning ability required by the jobs she cited. Similarly, the ALJ, in his May 10, 2018 decision, did not address the alleged conflict in reasoning level between McIssac's testimony and the DOT.[2] (Tr. 15-27).

The parties agree that two recent Eighth Circuit cases offer some guidance. In *Thomas v.*

---

[2] The ALJ noted McIssac's testimony varied from the DOT regarding sit/stand options. However, since the DOT does not address sit/stand options, the ALJ held there was a reasonable explanation for the discrepancy. (T. 26).

2

*Berryhill*, 881 F.3d 672 (8th Cir. 2018), the Court found an apparent conflict existed between an RFC limitation to one to two steps tasks and reasoning level 3 jobs, explaining:

> By incorporating the definition of level-one reasoning into the RFC, the ALJ indicated "that [Thomas] could perform only occupations at [that] reasoning level." *See Moore v. Astrue*, 623 F.3d at 604. An apparent conflict thus existed between the vocational expert's testimony that someone limited to "1 to 2 step tasks" could work as a new accounts clerk and the DOT description that being such a clerk involves a higher level of reasoning. *See Rounds v. Comm'r of SSA*, 807 F.3d 996, 1003 (9th Cir. 2015); *see also Porch v. Chater*, 115 F.3d 567, 571–72 (8th Cir. 1997). Because that conflict was "apparent" and not just "possible," the ALJ needed to do more than have the expert affirm that his testimony was consistent with the DOT. *Moore v. Colvin*, 769 F.3d at 990. Under the Commissioner's own policy, the ALJ was required to elicit from the expert an opinion on whether there is a "reasonable explanation" for the conflict and determine whether the expert's testimony warranted reliance despite the conflicting information in the DOT. *Id.* at 989–90. In the absence of that inquiry, the expert's testimony did not constitute substantial evidence on which the Commissioner could rely to conclude that Thomas was not disabled due to the existence of jobs in the national economy that she can perform.

881 F.3d at 678.

In *Stanton v. Comm'r Soc. Sec.*, 899 F.3d 555 (8th Cir. 2018), the ALJ relied on the VE's testimony that the plaintiff could work as a hospital or industrial cleaner, a job which required the worker to employ level 2 reasoning. The ALJ's hypothetical question limited the plaintiff to the ability to "understand, retain and carry out simple one to two step instructions," language which corresponds directly to the DOT's description of level 1 reasoning – "Apply commonsense understanding to carry out one- to two-step instructions." 2 DOT at 1011. The Court determined it was error for the ALJ to accept the VE's testimony without a reasonable explanation, since the VE's testimony amounted to a statement that the plaintiff, although limited to level 1 reasoning jobs, could nonetheless perform a job which the DOT described as having a requirement of level 2

3

reasoning.[3]  *Id.* at 559.

While *Thomas* and *Stanton* are helpful, these cases are not decisive. The ALJ in those cases used language which mirrored the DOT definition of level 1 reasoning – both cases using the phrase "1 to 2 step instructions." Rather than describing Gilbert's abilities in terms which track the DOT language, the ALJ here found Gilbert "retains the mental ability to understand, remember, and carry out *simple* job instructions; make judgments in *simple work-related situations*; respond appropriately to co-workers/supervisors and the public; and respond appropriately to *minor changes* in the usual work routine." (Tr. 20) (emphasis added).

Had the ALJ limited Gilbert to jobs requiring 1 to 2 step instructions, the undersigned would reverse and remand based upon *Thomas* and *Stanton*. However, the limitations cited by the ALJ are less clear than the language utilized in those cases. Other cases shed some light on how to proceed when the ALJ uses non-DOT language to describe a claimant's abilities. For example, in *Smithee v. Social Security Administration*, 2018 WL 3132603, No. 3:17cv175 (E.D. Ark. June 16, 2018), the ALJ's hypothetical question to the VE limited the plaintiff to "simple, routine, and repetitive tasks; simple work-related decisions; simple, direct supervision; and incidental interpersonal contact with co-workers and the public." *Id.* at 3. The VE testified the plaintiff could perform the job of price tagger, which has a reasoning level of 2. The Court found price tagger job was not beyond the

---

[3] For comparison's sake, level 1 reasoning requires a worker to apply commonsense understanding to carry out one- to two-step instructions and to deal with standardized situations with occasional or no variables in or from those situations encountered on the job. Level 2 reasoning requires a worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations. Level 3 reasoning requires a worker to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and to deal with problems involving several concrete variables in or from standardized situations. 2 DOT at 1011.

limitations assigned by the ALJ, so that there was no unresolved conflict between the VE's testimony and the DOT. In *James v. Berryhill*, 2018 WL 783083, No. 3:16cv348 BD (E.D. Ark. Feb. 8, 2018), the ALJ limited the plaintiff to "simple, routine work with simple instructions with SVP of 1 or 2." *Id.* at 1. The VE testified the plaintiff could perform jobs requiring level 3 reasoning. The Court reversed and remanded, finding there was a "discrepancy between the assigned RFC and the jobs the VE identified (level 1 reasoning v. level 3 reasoning), and the ALJ did not question the VE about that discrepancy." *Id.* at 3. The plaintiff in *Hart v. Social Security Administration*, 2019 WL 1412108, No. 5:18cv137 JM/BD (E.D. Ark. March 28, 2019), could, according to the ALJ, perform unskilled work with "simple, routine, repetitive tasks and make simple work-related decisions, . . . could work where interpersonal contact is incidental to the work performed and where supervision is simple, direct, and concrete." *Id.* at 1. The VE identified reasoning level 3 jobs which the plaintiff could perform. Distinguishing both *Thomas*, where the ALJ limited the plaintiff to 1- to 2-step tasks, and *James*, where the ALJ limited plaintiff to SVP 1 or 2 work and the plaintiff had borderline intellectual functioning, the Magistrate Judge found no conflict between the VE's testimony and the DOT. The Magistrate Judge also relied on *Hillier v. SSA*, 486 F.3d 359 (8th Cir. 2007), where the VE testified that the plaintiff, limited to "simple, concrete instructions," could perform the reasoning level 3 job of cashier. Notably, Hillier had worked as a cashier prior to her alleged onset date of disability, and had demonstrated no mental deterioration since her cashier days.

None of the foregoing cases easily resolve whether there is a conflict between McIssac's testimony and the DOT. The answer to this question requires the Court to determine, almost in mathematical fashion, whether the ALJ's description of Gilbert's reasoning ability was equivalent

5

to level 1, 2, or 3 reasoning ability as defined in the DOT. The difficulty of doing this is apparent from the cases cited herein. Part of the difficulty lies in the variations of the descriptions of capabilities when ALJs utilize non-DOT language. For example, the ALJ in this case limits Gilbert to "the mental ability to understand, remember, and carry out simple job instructions; make judgments in simple work-relate situations; respond appropriately to co-workers/supervisors and the public; and respond appropriately to minor changes in the usual work routine." (Tr. 20). This RFC differs in subtle ways from the limitations in *Smithee*, *James*, and *Hart*. In some instances the ALJ includes "routine" or "repetitive" in the description of a plaintiff's abilities, in one instance the ALJ includes an SVP rating of 2, and in another instance the ALJ limits the plaintiff to doing work with an SVP rating of 1 or 2.

The Court is not prepared to find the ALJ's description of Gilbert's reasoning ability equivalent to level 1 as defined in the DOT despite the emphasis on simplicity. Similarly, it is not clear that the ALJ's description is equivalent to the DOT's level 2 definition, as it is not apparent that Gilbert could "deal with problems involving a few concrete variables in or from standardized situations." 2 DOT at 1011. Gilbert's limitations, including the ability to respond to *minor* changes, seem clearly to fall short of level 3 reasoning abilities, such as the ability to deal with problems involving *several* concrete variables. Ultimately, arriving at an answer to the question of Gilbert's reasoning level is not possible under the circumstances. The record before the Court is inadequate to determine if Gilbert's reasoning ability was equivalent to a particular DOT reasoning level. As a result, the case must be remanded to clarify and obtain additional testimony from the VE. On remand, the ALJ should specify the highest DOT reasoning level compatible with Gilbert's ability, and the VE should, if necessary, explain any discrepancy between Gilbert's reasoning level and the

reasoning level required by jobs cited by the VE.

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In this instance, the ALJ limited Gilbert to simple job instructions, simple judgments, and responding to minor work routine changes. After the ALJ fixed this RFC, McIssac was responsible for citing jobs suitable for Gilbert's RFC. While tempting, it is not permissible for McIssac, or this Court, to alter the RFC or otherwise change the parameters of the questions posed to her. For example, McIssac could not assume Gilbert, as a college graduate, could perform level 3 reasoning jobs. Gilbert's education, as well as his work history and his daily activities, were all factors considered by the ALJ in determining Gilbert's RFC. Since these factors were already examined and weighed by the ALJ in performing his job of formulating an RFC, reexamination of any of these factors amounts to changing the RFC. For example, even if Gilbert could perform some daily activities consistent with level 3 reasoning, this would not change the limitations posed to McIssac. *But cf. Hart* at 5 (Hart's completion of high school, additional training, and ability to cook, read, and watch television cited as consistent with level-3 reasoning).

In summary, the ALJ determined Gilbert's RFC, opting to describe his mental abilities in non-DOT terms which left unanswered the question of his reasoning level. This lack of precision results in a conflict between McIssac's testimony of level 3 reasoning jobs available to Gilbert and the DOT. While the undersigned knows of no requirement that the ALJ use DOT language, the use of imprecise non-DOT language runs the risk of remand for clarification, as in this case. Where there is some doubt that the ALJ's description matches a particular reasoning level, affirming the decision

7

is not the preferred course, as the absence of a precise description of a claimant's reasoning level should not inure to Berryhill's benefit. In addition to his responsibility to determine Gilbert's RFC, the ALJ is charged with resolving any conflict between McIssac's testimony and the DOT. *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014). The ALJ did not inquire about the conflict and no explanation was given by McIssac. On remand, the ALJ is directed to cure this defect.

The case is remanded for further proceedings consistent with this Order.[4]

IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded. This remand is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 29th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] Finding merit in Gilbert's first claim, it is unnecessary to examine the other assertion of error.